IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JANET LYNN CHESSER                                              PLAINTIFF

v.                              No. 3:15–CV–103-BSM–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                  DEFENDANT

<u>Recommended Disposition</u>

**Instructions**

The following recommended disposition was prepared for Chief Judge Brian S.

Miller.  A party to this dispute may file written objections to this recommendation.  An

objection must be specific and state the factual and/or legal basis for the objection.  An

objection to a factual finding must identify the finding and the evidence supporting the

objection.  Objections must be filed with the clerk of the court no later than 14 days from

the date of this recommendation.[1]  The objecting party must serve the opposing party

with a copy of an objection.  Failing to object within 14 days waives the right to appeal

questions of fact.[2]  If no objections are filed, Judge Miller may adopt the recommended

disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Janet Lynn Chesser seeks judicial review of the denial of her application for social security disability benefits.[3]  In the past, Ms. Chesser worked for a manufacturer of windows.[4]  She claims she has been disabled since age 25, when she left her job.  Her reasons for leaving vary.[5]  She based disability on anxiety, nightmares, paranoia, hallucinations, and panic attacks.[6]

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ identified bilateral carpal tunnel syndrome, migraine headaches, bipolar disorder, anxiety disorder with panic and post-traumatic stress disorders as severe impairments.[7]  The ALJ determined that Ms. Chesser could do some unskilled light work in spite of her impairments.[8]  Because a vocational expert identified available work that a person with Ms. Chesser's limitations could perform, the ALJ determined

---

[3]SSA record at pp. 111 & 119 (applying on Apr. 27, 2012 and alleging disability beginning Dec. 15, 2011).

[4]*Id*. at pp. 27-28, 136 & 140.

[5]*Id*. at p. 28 (she left because she got divorced and moved out of state), p. 134 (stopped working due to my condition), p. 161-62 (fired due to anger), p. 174 (fired because of problems getting along with others) & p. 225 (fired for not paying attention).

[6]*Id*. at p. 134.

[7]*Id*. at p. 11.

[8]*Id*. at p. 13.

that Ms. Chesser was not disabled and denied the application.[9]

After the Commissioner's Appeals Council denied a request for review,[10] the ALJ's decision became a final decision for judicial review.[11] Ms. Chesser filed this case to challenge the decision.[12] The recommended disposition explains why the court should affirm the decision.

**Ms. Chesser's allegations**. Ms. Chesser claims the ALJ should have given more weight to her psychiatrist's medical statement. She contends that the ALJ did not sufficiently account for her carpal tunnel syndrome, migraine headaches, or mental impairments. For these reasons, she maintains, substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles**. In reviewing the denial of an application for disability benefits, the court must determine whether substantial evidence supports the

---

[9]*Id*. at pp. 17-18.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]Docket entry # 10.

decision and whether the ALJ made a legal error.[14]  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Ms. Chesser could perform some unskilled light work.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[15]  The ALJ placed the following limitations on light work:

> (1) no rapid repetitive flexion or extension of the wrist, and
>
> (2) work involving incidental interpersonal contact, tasks learned and performed by demonstration or repetition within 30 days, few variables, little judgment, and simple, direct, concrete supervision.[16]

The court must determine whether a reasonable mind will accept the evidence as adequate to show Ms. Chesser could work with these limitations.

**A reasonable mind will accept the evidence as adequate because the record contains no evidence of disabling symptoms**.  A claimant must prove disability with

---

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[16]SSA record at p. 13.

medical evidence; her allegations are not enough to prove she is disabled.[17]  Medical

evidence establishes carpal tunnel syndrome in both wrists, a history of migraine

headaches, and mental impairments.

    Carpal tunnel syndrome.  "Carpal tunnel syndrome is a disorder caused by

compression at the wrist of the median nerve supplying the hand, causing numbness

and tingling."[18]  Jobs involving "repeated strong wrist motions carry a relatively high

risk of carpal tunnel syndrome."[19]  Factory workers often get carpal tunnel syndrome.

Ms. Chesser did not base her claim on carpal tunnel syndrome, but 20 months after she

---

[17]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other
symptoms shall not alone be conclusive evidence of disability…; there must be medical
signs and findings, established by medically acceptable clinical or laboratory diagnostic
techniques, which show the existence of a medical impairment…which could
reasonably be expected to produce the pain or other symptoms alleged and
which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R.
§§ 404.1508 & 416.908 ("A physical or mental impairment must be established by
medical evidence consisting of signs, symptoms, and laboratory findings, not only by
your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about
your pain or other symptoms will not alone establish that you are disabled; there must
be medical signs and laboratory findings which show that you have a medical
impairment(s) which could reasonably be expected to produce the pain or other
symptoms alleged and which, when considered with all of the other evidence (including
statements about the intensity and persistence of your pain or other symptoms which
may reasonably be accepted as consistent with the medical signs and laboratory
findings), would lead to a conclusion that you are disabled.").

[18]Rosalyn Carson-DeWitt, Carpal Tunnel Syndrome, 2 The Gale Encyclopedia of
Med. 865 (4th ed.).

[19]*Id*. at p. 866.

stopped working at the window factory, nerve conduction studies showed moderately severe carpal tunnel syndrome.[20]

"The most severe cases of carpal tunnel syndrome may require surgery to decrease the compression of the median nerve and restore its normal function."[21]  After the hearing, but before the unfavorable decision, Ms. Chesser's doctor recommended surgery.[22]  The record does not reveal the results of surgery because Ms. Chesser submitted no evidence about surgery.  In the absence of evidence indicating that surgery failed to relieve Ms. Chesser's symptoms, the exclusion of work involving rapid repetitive flexion or extension of both wrists sufficiently accounted for residual symptoms.

Migraine headaches.  "Migraine is an intense and often debilitating type of headache. … Most people can control migraines through recognizing and avoiding triggers, and by using effective treatments. "[23]  Ms. Chesser takes no medication for migraines, but she sought emergency room (ER) treatment for migraines twice during

---

[20]SSA record at p. 293.

[21]Rosalyn Carson-DeWitt, Carpal Tunnel Syndrome, 2 The Gale Encyclopedia of Med. 866 (4th ed.).

[22]SSA record at p. 302.

[23]Rebecca J. Frey, Monique Laberge, Belinda Rowland & Laura Jean Cataldo, Migraine Headache, 4 The Gale Encyclopedia of Med. 2867-71 (4th ed.).

the 19 months for which benefits were denied.[24]  She was referred to a primary care

provider (PCP) for followup care, but she did not complain about headaches when she

established care with a PCP.[25]  Ms. Chesser's treatment history suggests no disabling

symptoms or any basis for limitation due to migraines.

    <u>Mental impairment</u>.  After she stopped working, Ms. Chesser sought mental

health treatment and complained about anxiety, paranoia, auditory hallucinations,

panic attacks, and nightmares.[26]  A psychiatrist identified multiple life stressors —

unstable relationships, legal and financial problems, and pending homelessness — and

diagnosed bipolar disorder, anxiety disorder, post-traumatic stress disorder, and

borderline personality disorder.[27]  At that time, Ms. Chesser was separated from her

husband and owed back child support.  The psychiatrist prescribed psychotropic

medications; the psychiatrist's prognosis was good.  Despite the prognosis, the

psychiatrist completed a medical source statement and described Ms. Chesser as "very

pathologically impaired."[28]  The record indicates the statement was based on the

psychiatrist's initial evaluation.

---

[24]SSA record at pp. 259 & 278.

[25]*Id*. at p. 296 (complaining about carpal tunnel syndrome).

[26]*Id*. at p. 212.

[27]*Id*. at p. 213.

[28]*Id*. at p. 221.

Treatment records contain no further information about mental health treatment, but several months later, Ms. Chesser told the mental diagnostic evaluator that she had received mental health treatment.[29]  The evaluator characterized Ms. Chesser as depressed and anxious, with logical and relevant thought processes.[30]  According to the evaluator, Ms. Chesser could cope with the mental cognitive demands of working, but might have problems completing tasks in a timely manner due to a volatile mood and anxiety.[31]

Ms. Chesser contends that the ALJ should have credited the disabling symptoms the psychiatrist reported — *e.g.*, the inability to work with or near others, work at a consistent pace, accept instructions, or respond to criticism appropriately.  But an ALJ may reject "a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record."[32]  The psychiatrist's statement conflicts with other substantial medical evidence contained within the record; specifically, the mental diagnostic evaluator's report and treatment notes from later

---

[29]*Id*. at p. 225.

[30]*Id*. at p. 226.

[31]*Id*. at p. 228.

[32]*Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

medical providers.  Later medical providers noted no problems with mood.[33]  In the

absence of evidence of deteriorating symptoms, the mental limits the ALJ placed on

work were sufficient to account for Ms. Chesser's mental impairment.

To the extent Ms. Chesser relies on her case worker's function report,[34] the ALJ

correctly observed that a case worker is not an acceptable medical source for purposes

of Social Security disability determination,[35] and the statement was based in substantial

part on Ms. Chesser's subjective allegations.[36]

**Vocational evidence supports the decision**.  After determining that Ms. Chesser

retaining the ability to work, the ALJ consulted a vocational expert.  When the ALJ

asked about available work for a person with Ms. Chesser's limitations, the vocational

---

[33]SSA record at p. 285 (Mar. 30, 2013, ER visit for asthma attack, calm, normal affect, mild distress), p. 278-80 (May 4, 2013, ER visit for headache, calm, normal affect), p. 270-72 (May 7, 2013, ER visit for viral syndrome, no apparent distress, cooperative, normal speech), p. 264-66 (June 3, 2013, ER visit after hurting fingers while playing basketball, no apparent distress, appropriate insight), p. 296 (July 19, 2013, visit with PCP to establish care for carpal tunnel syndrome), p. 256 (July 31, 2013, ER visit for left arm numbness, tingling, and pain, calm, normal affect), p. 295 (Aug. 6, 2013, visit with PCP for medication refills) & p. 306 (Sept. 10, 2013, consult with orthopedist for carpal tunnel syndrome, patient denied depression and hallucinations).

[34]*Id*. at p. 154.

[35]*See* 20 C.F.R. §§ 404.1513 & 416.913 (listing sources who can provide medical evidence to establish impairment).

[36]SSA record at p. 16.

expert identified representative jobs, *i.e.*, motel maid and machine feeder.[37]  The availability of these jobs shows that work exists that Ms. Chesser could do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[38]

<strong>Conclusion and Recommended Disposition</strong>

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Ms. Chesser's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 12th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[37]*Id*. at pp. 38-39.

[38]42 U.S.C. § 1382c(a)(3)(B).